

Eastern District of Kentucky
FILED
FEB 08 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-116-GWU

RAYMOND ROSE,                                                                    PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Rose

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Rose

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

> pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Rose

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Rose

physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Raymond Rose, filed his current application for SSI benefits on October 18, 2002, initially alleging disability since August 31, 1997 due to back problems, jaw problems, heart problems, high blood pressure, and emphysema. (Tr. 302, 312). He had filed a previous application alleging the same onset date, which had been denied in a decision by an Administrative Law Judge (ALJ) on March 29, 2002. (Tr. 256-83). At the administrative hearing held in connection with the present case, a new ALJ suggested that the onset date be amended to March 30, 2002, to which the plaintiff's attorney assented. (Tr. 671). The ALJ ultimately declined to reopen the prior application, making the period relevant to the current application March 30, 2002 through the date of the decision, June 2, 2005. (Tr. 31).

In the current decision, the ALJ found that the plaintiff had a "severe" combination of impairments due to a heart murmur, alcohol dependence, hypertension, a history of back and shoulder pain, depression, anxiety, and being status post bilateral mandible fracture with non-union on the right. (Tr. 20). Nevertheless, the ALJ adopted the residual functional capacity finding from the prior application, which was that the plaintiff could perform "medium" level exertion, could occasionally crouch and crawl and, absent the effects of alcohol abuse, would have a "limited but satisfactory" ability to carry out detailed instructions, maintain attention

7

and concentration, and respond appropriately to changes in the work setting. (Tr. 23, 276). The ALJ noted that in the previous decision, a vocational expert (VE) had been quoted as saying that there were jobs that the plaintiff could perform with these restrictions (Tr. 277), and adopted this testimony for the current decision. Notably, the transcript of the administrative hearing with this VE's testimony is not in the Court transcript.

Under the holding in Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), an ALJ is bound by the findings of a previous, final administrative decision absent a showing of changed circumstances. In the present case, the plaintiff was evaluated by cardiologist Craig A. Chasen in November, 2002, well after the final, March 29, 2002 administrative decision. The reason for the examination was that the plaintiff's head and neck surgeon, Dr. Oneida Arosarena, had scheduled him for a repair of a "mandibular non-union with a reconstruction plate and iliac crest cancellous bone graft" (e.g., Tr. 443) but the patient had been found to have a heart murmur and *exertional breathlessness* on preoperative evaluation (Tr. 461). Dr. Chasen obtained an echocardiogram (Tr. 468) showing a heavily thickened aortic valve consistent with aortic stenosis, and noted that Mr. Rose had "multiple medical problems that make him far from an ideal candidate for ear, nose, and throat surgery" (Tr. 462). He would also need "close medical/cardiology follow-up to ascertain the appropriate time for ultimate [aortic valve replacement]." (Id.). A follow-up echocardiogram in February, 2003 (Tr. 458)

Rose

was interpreted by Dr. Chasen as confirming the findings from the previous study. (Tr. 456). No specific functional restrictions were given.

A consultative examiner, Dr. Mark Carter, examined the plaintiff on February 5, 2003, and apparently was not provided with actual records from Dr. Chasen, although the plaintiff related that "he was told that he had a heart murmur and a valve leaking." (Tr. 491). Dr. Carter's examination also disclosed a systolic ejection murmur (Tr. 492-3), and he obtained some objective studies, including a pulmonary function test showing a moderate expiratory obstruction with an FEV1 result of only 61 percent of the predicted level after bronchodilation (Tr. 493, 496) and a chest x-ray showing borderline cardiomegaly. (Tr. 493).[1] In terms of functional restrictions, Dr. Carter commented that "given his obesity, moderate expiratory obstruction, and aortic stenosis, I think he may have problems with moderate strenuous activity." (Tr. 495).

State agency physicians reviewed the records. Dr. James Ramsey gave opinions on March 4 and March 6, 2003, affirming the residual functional capacity found in the previous ALJ's decision. (Tr. 504-15). It does not appear that he had access to records from Dr. Chasen, however, which were not requested by the state agency until March 3, 2003. (Tr. 452). The other state agency physician, Dr. David Swan, gave his opinion later in 2003, after the records from Dr. Chasen were

---

[1] He also diagnosed an impingement syndrome of the right shoulder. (Tr. 493).

9

available, and indicated that he could not agree with Dr. Ramsey's decision because "aortic stenosis can seriously interfere [with] exertional ability" by limiting cardiac output. (Tr. 527). Ultimately, he concluded that the plaintiff would be limited to "light" level exertion "in view of the identified significant valvular disease and a notable inability to increase systolic pressure with activity which was identified by the cardiologist," although concluding that valve replacement was not urgently necessary at this time. (Tr. 524).

The ALJ rejected Dr. Swan's restrictions, stating that they were not supported by the plaintiff's treatment record with the cardiologist, who had "imposed no functional restrictions." (Tr. 22). The ALJ added that "given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment record that a treating physician considered the claimant disabled" and that the record did not indicate a worsening of the claimant's condition since the prior decision. (Id.).

However, in view of the fact that Dr. Swan was the only physician with access to recent objective testing indicating an aortic valve problem, which he felt would limit the plaintiff to light level exertion, and Dr. Carter's not inconsistent comment that "he may have problems with moderate strenuous activity," a remand will be required for further consideration. At a minimum, the ALJ should obtain a medical opinion from a medical source with access to all the new evidence if Dr. Swan's opinion is to be rejected.

10

Rose

There is also potentially an issue regarding the plaintiff's education level, given that in connection with the present application, school records were submitted showing extremely poor performance in basic courses such as English and mathematics through the plaintiff's junior year of high school (Tr. 333-6), and achievement testing conducted in October, 2003 showed only fourth grade reading ability, third grade spelling ability, and fifth grade arithmetic ability (Tr. 502). This may represent greater restriction than was assumed by the plaintiff's self-reported 11th grade education, although since the VE's testimony is not available, it is impossible to determine which factors were considered.

The decision will be remanded for further consideration.

This the ___8___ day of February, 2006.

G. WIX UNTHANK
SENIOR JUDGE